GOULD, Circuit Judge,
with whom WARDLAW and PAEZ, Circuit Judges, join, dissenting from the denial of rehearing en banc:
I regret that a majority of our court’s active, nonrecused judges has not decided that the panel’s overbroad opinion, which employs unduly restrictive language to foreclose citizen suits seeking to use the Clean Air Act to fight global warming, warrants rehearing en banc.
The panel concludes that because the plaintiff environmental organizations “are not sovereigns,” the reasoning of the United States Supreme Court’s decision in Massachusetts v. EPA, 549 U.S. 497, 127 S.Ct. 1438, 167 L.Ed.2d 248 (2007), “cannot logically apply ... to this case,” Bellon, 732 F.3d at 1146. Thus, and in a way not even favored by the prevailing party,[1] the panel has essentially read private citizens out of the equation when it comes to using courts to address global warming. The majority’s argument — whose logical conclusion is that non-state entities categorically lack standing to use the Clean Air Act to compel state action on global warming — disregards Supreme Court precedent, makes bad law for our circuit, and harms the public.
The panel distinguishes Bellon from the Supreme Court’s decision in Massachusetts v. EPA, which held, among other things, that Massachusetts had standing to petition for review of an EPA order that denied a petition for rulemaking under the Clean Air Act to regulate greenhouse gas emissions from motor vehicles. 549 U.S. at 518-20, 127 S.Ct. 1438. As part of its support for standing, the Court in that case noted that Massachusetts, as a sovereign state, was “entitled to special solicitude in our standing analysis.” Id. at 520, 127 S.Ct. 1438.
The Bellon panel relies on this “special solicitude” language to reach its ill-conceived decision that Washington environmental organizations lack standing to use the Clean Air Act to compel state and regional agencies to regulate greenhouse gas emissions from the state’s oil refineries. See Bellon, 732 F.3d at 1145 (“In contrast to Massachusetts v. EPA, the present case neither implicates a procedural right nor involves a sovereign state. Rather, Plaintiffs are private organizations, and therefore cannot avail them *1080 selves of the ‘special solicitude’ extended to Massachusetts by the Supreme Court.”). The panel chastises the environmental organizations for “attempt[ing] to transplant the relaxed standing rule the Court carved out for a sovereign state” in Massachusetts v. EPA to their circumstances, and concludes that “Plaintiffs are not sovereign states and thus the Court’s standing analysis does not apply.” Id. at 1147.
Massachusetts v. EPA in my view, does not mean that only states have standing for environmental challenges relating to global warming. The Supreme Court’s reasoning endorsed the principle that causation and redressability exist, independent of sovereign status, when some incremental damage is sought to be avoided. Accordingly, Massachusetts v. EPA also confers standing upon individuals seeking to induce state action to protect the environment.
Although the panel stresses the “special solicitude” language of Massachusetts v. EPA, it ignores the logic of the Supreme Court’s reasoning. EPA argued that “its decision not to regulate greenhouse gas emissions from new motor vehicles contributes so insignificantly to petitioners’ injuries that the Agency cannot be haled into federal court to answer for them.” Massachusetts v. EPA, 549 U.S. at 523, 127 S.Ct. 1438. In other words, EPA argued, there existed no “realistic possibility” that the marginal benefit of the regulation Massachusetts requested “would mitigate global climate change” to an extent that would remedy the injury alleged, especially in light of “predicted increases in greenhouse gas emissions from developing nations” like India and China. Id. at 523-24, 127 S.Ct. 1438. EPA contended that because Massachusetts could not prove that EPA’s decision not to regulate greenhouse gas emissions from new cars and trucks caused its climate change-related injuries, Massachusetts lacked standing to bring its suit. Id. at 523-25, 127 S.Ct. 1438.
The Supreme Court squarely rejected this argument: “EPA overstates its case. Its argument rests on the erroneous assumption that a small, incremental step, because it is incremental, can never be attacked in a federal judicial forum.” Id. at 524, 127 S.Ct. 1438. Because agencies “do not generally resolve massive problems in one fell regulatory swoop,” the Court concluded that Massachusetts had standing to file its suit compelling EPA to issue the regulation, even though “regulating motor-vehicle emissions will not by itself reverse global warming.” Id. at 524-25, 127 S.Ct. 1438. Similarly, the environmental organizations here, by compelling the State of Washington to act, could encourage incremental change that, per the logic of Massachusetts v. EPA, is sufficient for causation and redressability.
The Bellon panel ignores the Supreme Court’s reasoning. First, it argues that “there are numerous independent sources of GHG emissions, both within and outside the United States, which together contribute to the greenhouse effect.” Bellon, 732 F.3d at 1144. This is true but not controlling. The Supreme Court has said that consideration of other countries’ emissions is not relevant to our evaluation of climate change-related injuries. See Massachusetts v. EPA, 549 U.S. at 525-26, 127 S.Ct. 1438 (“Nor is it dispositive that developing countries ... are poised to increase greenhouse gas emissions substantially over the next century: A reduction in domestic emissions would slow the pace of global emissions increases, no matter what happens elsewhere.”). Second, the panel decides that the environmental organizations’ “causal chain is too tenuous to support standing” because “a multitude of independent third parties are responsible for the *1081 changes contributing to [their] injuries and because the greenhouse gas emissions at issue make up only 5.9 percent of emissions in Washington. Bellon, 732 F.3d at 1143-46. This is true but irrelevant. “That a first step might be tentative does not by itself support the notion that federal courts lack jurisdiction to determine whether that step conforms to law.” Massachusetts v. EPA, 549 U.S. at 524, 127 S.Ct. 1438.
The panel concedes that the emissions at issue here “may be a significant portion of state emissions.” Bellon, 732 F.3d at 1145-46. And yet it decides that the environmental organizations lack standing because of a dearth of evidence showing that emissions from the five oil refineries constitute a “meaningful contribution” to global greenhouse gas levels. See id. at 1146 (quoting Massachusetts v. EPA, 549 U.S. at 525, 127 S.Ct. 1438). The panel thus imposes on the environmental organizations a mandate to show some unidentified threshold of emissions before they may bring their suit. In so doing, the panel forecloses citizen suits seeking to use the Clean Air Act to compel states to act to fight global warming if those suits are brought by any non-state entity, ignoring the Supreme Court’s reasoning in Massachusetts v. EPA.
Limiting the reasoning of Massachusetts v. EPA to cases involving sovereign states is a mistake that will harm the public. The panel’s opinion unwisely requires courts to deny standing to any non-state plaintiff seeking to enforce the Clean Air Act’s provisions in the effort to fight global warming, and relegates judges — and the general public — to the sidelines as climate change progresses. In my view, as our planet warms and our oceans rise, individual citizens should have standing to urge their states to take corrective incremental actions to combat global warming. By preventing such suits, the panel’s opinion interferes with the principle that individual states can experiment on a tough problem. As Justice Brandéis recognized: “It is one of the happy incidents of the federal system that a single courageous state may, if its citizens choose, serve as a laboratory; and try novel social and economic experiments without risk to the rest of the country.” New State Ice Co. v. Liebmann, 285 U.S. 262, 311, 52 S.Ct. 371, 76 L.Ed. 747 (1932) (Brandéis, J., dissenting).[2] In my view, states can take significant steps to slow or stop global warming by reducing greenhouse gas emissions. And just as a state has Article III standing to sue the federal government to encourage federal action to stem global warming, see Massachusetts v. EPA, 549 U.S. at 521, 127 S.Ct. 1438, so too may individuals or environmental organizations sue states to encourage state action for the same purpose. The panel’s opinion sadly stands in the way. I respectfully dissent from our failure to rehear this case en banc.[3]

. The State of Washington, which prevailed before the panel, was asked to provide its views on en banc rehearing. Naturally, it did not want en banc rehearing and a new panel, but it had these negative comments about the panel decision: "[T]he panel may want to rehear the matter to determine whether its decision contains unnecessarily broad dicta....” The State of Washington added: “[T]he panel's opinion ... includes dicta suggesting that it might be difficult for private plaintiffs ever to establish causation in a climate change lawsuit.” Defendant-Appellant Maia Bellon's Brief on Whether Case Should Be Reheard En Banc at 1-2, Wash. Envtl. Council v. Bellon, 732 F.3d 1131 (9th Cir.2013) (Nos. 12-35323, 12-35324, & 12-35358).

. The concurrence of Judge M. Smith argues that Justice Brandeis's dissent in New State Ice Co. v. Liebmann is “completely inappo-site” here. But because the panel opinion stops citizens from using litigation to prod their states into action against global warming, the opinion effectively interferes with the ability of states to experiment with solutions. Absent the type of public pressure that can arise through litigation, it might be expected that state responses to the threat of global warming will be less forceful and less frequent.

. The concurrence of Judge M. Smith urges that Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), *1082 controls this case and was not given enough weight in my analysis. Judge M. Smith’s opinion implies that no plaintiffs except states can go to court challenging global warming because of causation and redressability concerns. See Bellon, 732 F.3d at 1147 (holding that Massachusetts v. EPA, 549 U.S. 497, 127 S.Ct. 1438, 167 L.Ed.2d 248 (2007), is inapplicable to this case because "Plaintiffs are not sovereign states and thus the Court's standing analysis does not apply”). But Massachusetts v. EPA, read with Lujan, suggests that a challenge can be made to part of the problem, and that solutions can be incremental. States can only sue the EPA if Article Ill's standing requirements, as defined by Lu-jan, are satisfied. The concurrence ignores that. Massachusetts v. EPA, in other words, must mean that the State of Massachusetts can show adequate causation on global warming despite worldwide increasing greenhouse gas emissions, whether from other countries or other states, and it clearly means that incremental efforts to stem the tide of climate change are sufficient under Article III to redress injuries caused by global warming. The Bellon plaintiffs seek to require state action addressing the problem of greenhouse gas emissions and satisfy the Lujan standards of causation and redressability under Article III for the same reasons that Massachusetts did.